UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL ACEDO, | Case No.: 17-CV-2592 JLS (JLB) |
| Plaintiff, | |
| v. | **ORDER: (1) GRANTING MOTION TO DISMISS; (2) DISMISSING COMPLAINT; (3) DENYING MOTION FOR DEFAULT JUDGMENT; (4) GRANTING MOTION TO SEAL; AND (5) GRANTING IN PART AND DENYING IN PART MOTIONS TO STRIKE** |
| COUNTY OF SAN DIEGO, CARLOS OLMEDA, JOHN DOE, and JANE DOE 1 THROUGH 100, | |
| Defendants. | |
| | (ECF Nos. 4, 7, 21, 22, 26, 28) |

Presently before the Court is Defendants County of San Diego and Carlos Olmeda's Motion to Dismiss, (ECF No. 4). Also before the Court is Plaintiff Daniel Acedo's Motion for Default Judgment, (ECF No. 7). Finally, Defendant County of San Diego filed a Motion to Seal, (ECF No. 13), requesting to seal various documents filed in support of the motions to dismiss and for default judgment. The Court discusses each in turn.

## MOTION TO DISMISS

On January 5, 2018, Defendants filed the present Motion to Dismiss. ("MTD," ECF No. 4.) Plaintiff filed a Response in Opposition to, ("MTD Opp'n," ECF No. 12), the

Motion. Defendants filed an Evidentiary Objection, (ECF No. 15), to Plaintiff's Opposition brief and filed a Reply[1] in Support of, ("Reply ECF No. 14), their Motion. The Court vacated the hearing on the Motion and took the matter under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). (ECF No. 17.) Having considered the parties' arguments and the law, the Court rules as follows.

## I. Background

Plaintiff is an inmate, proceeding *pro se*, at Valley State Prison. He filed this suit in California Superior Court on September 15, 2016. (*See* ECF No. 1-5.) For over a year Plaintiff did not serve any defendants and instead filed various motions and amended pleadings in state court. (*See* ECF No. 1.) Plaintiff filed the present iteration of his Complaint on October 27, 2017. ("Compl.," ECF No. 1-28.) On November 29, 2017, Plaintiff served the Complaint on the County of San Diego, (ECF No. 1), and on November 30, 2017, he served Mr. Olmeda, (ECF No. 1-34). Defendants removed this case to federal court on December 29, 2017. (ECF No. 1.)

Plaintiff alleges that Defendant Olmeda, a social worker, and Doe Defendant social workers filed a petition ("Petition No. 512952") before the California state superior court, juvenile division ("juvenile court"), which that court granted in a hearing pursuant to California Welfare and Institutions Code § 366.26.[2] (Compl. 10.)[3] As a result of the

---

[1] Defendants also filed a Motion to Seal their Reply, and other documents Plaintiff filed in support of his Opposition. (ECF No. 13.) On January 12, 2018, the Clerk of Court restricted access to documents in this case to only the parties participating in the case. The Court believes that this is a sufficient remedy to the disclosure of otherwise confidential documents that Plaintiff has filed in this docket. Should further protections be warranted, the Court will consider them at a later time. Accordingly, the Court **GRANTS** Defendants' Motion to Seal, (ECF No. 13), to the extent it requests the CM/ECF access be restricted to case participants.

[2] The Court's summary of the factual allegations is the best attempt at reconstructing the events in question. As Defendants point out, Plaintiff's allegations are unclear. (*See* MTD 12–14.) For example, Plaintiff only refers to his hearing as a ".26," which the Court infers is a reference to California Welfare & Institutions Code § 366.26. That section allows juvenile courts to determine a permanent plan for foster children. Further, Plaintiff does not explain Petition No. 512952 in any depth and there are no factual allegations as to the petition's intent or the nature of Plaintiff's case before the juvenile court.

[3] Pin citations refer to the CM/ECF page numbers electronically stamped at the top of each page.

juvenile court granting the petition, Plaintiff further alleges that a "special relationship" was created between him and Defendant social workers, including Mr. Olmeda. (*Id.*) According to Plaintiff, Defendant Olmeda and the Doe defendants had possession of his medical records. (*Id.* at 11.) The medical records and special relationship is noteworthy because Plaintiff alleges that he can show a legitimate claim for entitlement to Social Security Income ("SSI") benefits. (*Id.* at 3.) He cites various reports in his medical record from doctors supporting his medical impairment, which purportedly establishes his claim for SSI benefits. (*See id.* at 4–7.) Plaintiff states that Defendants "failed to protect" him by failing to apply for Plaintiff's SSI benefits and "were required to prevent harm," again by applying for benefits. (*Id.* at 11.) The locus of his first claim is that "Defendants knew of Plaintiff's disability and . . . . did not apply to the Commissioner of the SSA [Social Security Administration] or otherwise proceed to the [administrative law judge] or seek judicial review" therefore depriving Plaintiff of his disability benefits. (*Id.* at 12.)

Plaintiff's second claim is that he was deprived of a constitutional liberty, specifically being part of a family unit. (*Id.* at 13.) He states that Defendants did not give proper notice to Plaintiff's biological mother that "reunification services" were available prior to the juvenile court hearing. (*Id.* at 15.) Plaintiff explains that he was harmed because his right to belong to a family unit was infringed by the lack of proper notice. (*See id.*) Plaintiff also alleges that Defendant County of San Diego failed to properly train its social workers on depriving people of their liberty and property interests without due process of law. (*Id.* at 14.)

Plaintiff brings his claims under 42 U.S.C. § 1983 for violations of his due process rights guaranteed by the Fourteenth Amendment.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil

Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

Because this case comes before the Court on a motion to dismiss, the Court must accept as true all material allegations in the complaint, and must construe the complaint and all reasonable inferences drawn therefrom in the light most favorable to Plaintiff. *See Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). When a plaintiff appears *pro se*,

the court must be careful to construe the pleadings liberally and to afford the plaintiff any benefit of the doubt. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Thompson*, 295 F.3d at 895. Where a complaint does not survive 12(b)(6) analysis, the Court will grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading . . . [will] cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schriber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). Furthermore, "before dismissing a pro se complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." *Ferdick v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992).

## III. Analysis

Plaintiff brings civil rights claims under 42 U.S.C. §§ 1983, 1985(2), (3), and 1986.[4] (Compl. 2.) To establish liability under section 1983, Plaintiff must show (1) that he was deprived of a right secured by the United States Constitution or a federal law and (2) that the deprivation was effected "under color of state law." *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003) (quoting *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978)) (internal quotation marks omitted). The Court addresses the color of state law requirement first and then the constitutional deprivation, as the latter is the contested element.

Plaintiff alleges that Defendant Olmeda was acting under color of law during the relevant conduct in question. (*See* Compl. 11.) "There is no 'rigid formula' for determining whether a state or local law official is acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1068 (9th Cir. 2006) (quoting *Ouzts v. Md. Nat'l Ins. Co.*, 505 F.2d 547, 550 (9th Cir. 1974)). "State employment is generally sufficient to render the defendant a state actor," *West v. Atkins*, 487 U.S. 42, 48 (1988) (internal

---

[4] Plaintiff lists all three statutes on the first page of his Complaint, but does not elaborate on his legal theory as to sections 1985 and 1986. Because Plaintiff fails to address or explain his additional legal theories and does not allege facts as to those theories, the Court finds Plaintiff fails to state a claim and dismisses these causes of action.

quotations and alterations omitted), but "whether a[n] . . . officer is acting under color of state law turns on the nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of his official duties," *Martinez v. Colon*, 54 F.3d 980, 986 (1st Cir. 1995). Here, Defendants do not contest that Defendant Olmeda was acting under color of state law. Defendant Olmeda appears to have been interacting with Plaintiff in his official capacity as a social worker and the Court finds that Plaintiff has plausibly established that Defendant Olmeda was acting under color of state law.

Plaintiff alleges two distinct deprivations of his due process rights guaranteed by the Fourteenth Amendment. First, Plaintiff alleges that he has a legitimate claim for Social Security benefits and that he has been deprived of his property interest in those benefits by Defendants. (*See* Compl. 3, 7, 10.) Second, Plaintiff alleges that Defendants deprived his liberty interest in being part of a family unit. (*Id.* at 13.) The Court addresses each alleged deprivation in turn. Finally, Plaintiff brings a *Monell* claim against the County of San Diego.

### A. Plaintiff's Social Security Entitlement Claim

#### 1. Special Relationship Exception

Plaintiff's property interest in SSI benefits stems from his allegation that the State has a special relationship to provide for his well-being. (*See* Compl. 10.) Generally, "the Fourteenth Amendment's Due Process Clause . . . does not confer any affirmative right to governmental aid" and "typically does not impose a duty on the state to protect individuals from third parties." *Henry A. v. Willden*, 678 F.3d 991, 998 (9th Cir. 2012) (alteration in original) (quoting *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971 (9th Cir. 2011)). There are two exceptions to this rule. First, the "special relationship" exception exists when "a custodial relationship exists between the plaintiff and the State such that the State assumes some responsibility for the plaintiff's safety and well-being." *Id.* (citing *Patel*, 648 F.3d at 971); *see DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 198–202 (1989). Second, the "state-created danger exception" arises when the state affirmatively places a plaintiff in danger by acting with deliberate indifference to a "known and obvious

6

danger." *Id.* (citing *Patel*, 648 F.3d at 971–72). Either exception may give rise to a § 1983 claim. *Id.*

The special relationship arises when the State takes a person into custody and holds her against her will. *DeShaney*, 489 U.S. at 199–200. The doctrine occurs in the prisoner-prison relationship, but also applies to children in foster care. *See Tamas v. Dep't of Soc. & Health Servs.*, 630 F.3d 833, 846–47 (9th Cir. 2010). Once the special relationship exists then the State has an affirmative duty to provide certain basic necessities. Correspondingly, when the State "fails to provide for . . . basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by . . . the Due Process clause." *DeShaney*, 489 U.S. at 200.

Plaintiff alleges that the special relationship arose once the juvenile court granted Petition No. 512952 filed by Defendant Olmeda and the Doe Defendants. (Compl. 10.) Defendants do not directly address and thus do not dispute Plaintiff's special relationship claim. Instead, Defendants argue that Plaintiff's Complaint fails for a variety of reasons. Defendants contend that the Complaint fails to give them notice as to what specific conduct Plaintiff alleges against them and thus violates Federal Rule of Civil Procedure 8. (MTD 17.) Defendants also argue that this Court does not have jurisdiction to adjudicate Plaintiff's SSI benefit claim because he has not presented his claim to the Social Security Administration ("SSA").[5] (*Id.* at 18.) They also contend that Plaintiff fails to state a claim under § 1983 because, for example, Plaintiff alleges violations of state statutes and § 1983 only reaches federal constitutional and statutory law. (*Id.* at 24 (citing, e.g., *Baker v. McCollan*, 443 U.S. 137, 143 (1979)).) Finally, Defendants argue that Plaintiff's "special relationship" theory fails because the doctrine only ensures "reasonable safety and minimally adequate care and treatment," but not applying for SSI benefits. (*Id.* at 26 (quoting *Henry A.*, 678 F.3d at 1000).)

---

[5] Defendants also contend that the statute of limitation bars Plaintiff's SSI benefit claim. (MTD 22–23.) The Court finds that Plaintiff fails to state a claim and therefore does not reach the statute of limitations argument.

At the outset, Plaintiff has not established there was a special relationship between him and the State because it is not clear what happened at or after the juvenile proceedings. For example, Plaintiff alleges that "Social Workers Carlos Olmeda and John Doe and Jane Doe 1 through 100 created a special relationship once the juvenile court granted . . . Petition No. 512952." (Compl. 10.) The Complaint contains no further detail as to the nature of the petition, the nature of the juvenile court proceeding, or the outcome of the proceeding. At most, the Court can infer that a hearing occurred pursuant to California Welfare & Institutions Code § 366.26 because Plaintiff refers to the hearing as a ".26 hearing." (*Id.* at 17.) Section 366.26 applies "to children who are adjudged dependent children of the juvenile court pursuant to [§ 360(d)]." Cal. Welf. & Inst. Code § 366.26(a). Yet, section 366.26 provides for a variety of outcomes, *see* § 366.26(b), and the Court does not have any particularized factual allegation concerning what occurred as a result of the hearing. Without specific factual allegations, the Court cannot ascertain Plaintiff's status concerning the special relationship exception.

Even if Plaintiff were able to plausibly establish that he was in a special relationship with the State, such a finding does not answer the remaining question of whether Plaintiff has a Due Process right for Defendants to apply for SSI benefits on his behalf. The Supreme Court has held that individuals have a right to continued receipt of Social Security benefits, which is a protected property interest under the Fifth Amendment. *See Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) (collecting cases). Further, a Social Security claimant has certain procedural due process safeguards against the deprivation of her protected property interest. *See id.* at 333–34. Thus, if Plaintiff had Social Security benefits then he could not be deprived of those benefits without due process. Or, had Plaintiff applied for benefits and was denied then he would likewise have recourse.

Defendants urge the Court to find that it does not have jurisdiction because Plaintiff has not exhausted his administrative remedies. (MTD 18 (citing *Bowen v. New York*, 476 U.S. 467, 483 (1986); *Johnson v. Shalala*, 2 F.3d 918, 921 (9th Cir. 1993)).) Plaintiff argues that the Court should excuse him from the exhaustion requirement because the

Commissioner of the SSA did not respond to his SSI application, which Plaintiff attached as an exhibit to his Opposition brief.  (*See* Opp'n 8, 48–50.)

To the extent this case presents a denial of benefits claim by Plaintiff the Court does not have jurisdiction to consider a Social Security appeal without the appeal first being presented to the Commissioner of the SSA.  *See Johnson*, 2 F.3d at 921.  In his Opposition brief, Plaintiff contends, for the first time, that he has applied for benefits and the SSA did not respond to his application.  (Opp'n 8.)  The Court cannot consider Plaintiff's allegations raised in his Opposition brief or his attached exhibit because they was not included as part of his Complaint.  The law is clear that a court may not look beyond a complaint to a party's moving papers, i.e. a response in opposition to a motion, when adjudicating a Rule 12(b)(6) motion.[6]  *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998); *Jacobellis v. State Farm Fire & Cas. Co.*, 120 F.3d 171, 172 (9th Cir. 1997).  Therefore, Plaintiff has not sufficiently alleged that he exhausted his administrative remedies.[7]

However, Plaintiff is not only arguing he applied and was denied benefits or that he had benefits and lost them.  He is also arguing that because of the "special relationship" exception, Defendants should have applied for benefits on his behalf.  After properly construing Plaintiff's claim, it is clear that Defendants' jurisdictional argument does not fully encompass the essence of Plaintiff's claim.

---

[6] Along the same lines, Defendants raise evidentiary objections to evidence submitted by Plaintiff in support of his Opposition brief.  (ECF No. 15.)  In light of the Court's ruling on the Motion to Dismiss, the Court **DENIES AS MOOT** Defendants' evidentiary objections.

[7] Plaintiff further argues the exhaustion requirement should be waived because he meets the judicial exception for waiver.  (Opp'n 9 (citing *Hyatt v. Heckler*, 807 F.2d 376, 378 (4th Cir. 1986)).)  He states that he has been irreparably injured because he has been deprived $168,192 in benefits.  (*Id.*)  And, Plaintiff claims that if this matter was sent back to the Commissioner of the SSA, the "collateral claim for benefits" would exempt him from exhaustion.  (*Id.*)  The Ninth Circuit applies a three-part test to determine judicial waiver.  *Johnson*, 2 F.3d at 921.  "The claim must be (1) collateral to a substantive claim of entitlement (collaterality), (2) colorable in its showing that denial of relief will cause irreparable harm (irreparability), and (3) one whose resolution would not serve the purposes of exhaustion (futility)."  *Id.* (citing *Briggs v. Sullivan*, 886 F.2d 1132, 1139 (9th Cir. 1989)).  Plaintiff's arguments are conclusory and do not explain how any of the three elements apply to his situation.  Thus, the Court finds he does not meet the judicial waiver exception.

It does not follow, however, that the special relationship doctrine creates a responsibility on a social worker to apply for a potential claimant's Social Security benefits. The Supreme Court has characterized the affirmative duty required by the special relationship doctrine as providing for basic human needs, "*e.g.*, food, clothing, shelter, medical care, and reasonable safety." *DeShaney*, 489 U.S. at 200. Obviously, applying for social security benefits is not part of that list, nor is it similar to the specifically delineated items in that list. SSI benefits are not a basic human need.

One of Plaintiff's cited cases, *Henry A. v. Willden*, 678 F.3d 991, is informative as to what duties the State must provide to Plaintiff. There, the plaintiffs alleged conduct violating their rights to adequate safety and medical care. *Id.* at 998. The allegations included, "failure to adequately provide medical, dental, and mental health services . . . failure to inform caregivers of essential information . . . failure to adequately respond to reports of abuse . . . and failure to adequately inspect out of state facilities." *Id.* These allegations all derived from the requirement to provide medical care and reasonable safety. The Ninth Circuit addressed the allegations in the context of a qualified immunity analysis and determined that the allegations met a clearly established right; specifically, "food, clothing, shelter, medical care, and reasonable safety." *Id.* at 1000 (citing *DeShaney*, 489 U.S. at 200). Thus, a reasonable official may be liable when a plaintiff provides detail factual allegations that the defendant "failed to provide adequate medical care, monitor the administration of medication, or respond to reports of abuse." *Id.* at 1001.

As Defendants point out, the special relationship exception only requires the State to provide "reasonable safety and minimally adequate care and treatment appropriate to the age and circumstances of the child." (MTD 26 (quoting *Henry A.*, 678 F.3d at 1000).) Applying for SSI benefits is not consonant with "reasonable safety and minimally adequate care and treatment," but goes far beyond the minimal constitutional requirements. The critical distinction, as the *Henry A.* court illustrated, is the difference between a need and a benefit. The special relationship exception demands the State protect a foster child's needs: medical, shelter, and reasonable safety. A benefit or entitlement is a property interest that

individuals apply for at their discretion.  A discretionary property interest is not a necessity because the latter is something a person cannot live without.  Therefore, the State is under no legal obligation to apply for SSI benefits arising from the "special relationship."

Practical considerations also counsel against finding Defendants were required to apply for Plaintiff's SSI benefits.  Requiring the State to apply for SSI benefits would open the door to likewise requiring the State to apply for welfare benefits, worker's compensation benefits, and other similar entitlements.  Such a finding would place an immense burden on the State to parse individual medical records, discern whether a person had a potential benefit claim, and navigate the SSI benefit process.  The practical implications only reinforce the conclusion that SSI benefits are not within the minimal constitutional requirements.  Therefore, the Court finds that applying for SSI benefits is not required under the duties created by the special relationship exception.[8]  Accordingly, Plaintiff fails to state a claim for deprivation of his constitutional right in any property interest in SSI benefits.

### 2. Procedural Due Process Claim

Plaintiff also appears to be bringing a procedural due process claim for denial of his SSI benefits.  (*See* Compl. 8.)  To obtain relief on § 1983 claims based upon procedural due process, the plaintiff must establish the existence of "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." *Guatay Christian Fellowship v. Cnty. of San Diego*, 670 F.3d 957, 983

---

[8] Plaintiff does not directly address the state-created danger exception, but does allege that Defendants "failed to protect" him.  (Compl. 11.)  "To prevail on a state-created danger due process claim, a plaintiff must show more than merely a failure to create or maintain a safe work environment.  First, a plaintiff must show that the state engaged in 'affirmative conduct' that placed him or her in danger." *Pauluk v. Savage*, 836 F.3d 1117, 1124 (9th Cir. 2016) (citing *Patel*, 648 F.3d at 974).  The affirmative conduct must have placed a plaintiff in a "worse position than that in which he would have been had [the state] not acted at all." *Id.* at 1124–25 (alteration in original) (quoting *Johnson v. City of Seattle*, 474 F.3d 634, 641 (9th Cir. 2007)).  Plaintiff's "fail[ure] to protect" argument, (Compl. 11), cannot prevail because he alleges that Defendants did not apply for benefits on his behalf.  The failure to act cannot satisfy the state-created danger exception's requirement for *affirmative* conduct.  The Court need not reach the second element of the state-created danger exception as Plaintiff's claim fails at the first step.

(9th Cir. 2011) (quoting *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).

Defendant argues that Plaintiff fails to allege a deprivation of any liberty or property interest by the government. (MTD 25.) The Court agrees with Defendant. A recipient of social security benefits cannot be deprived of those benefits without proper procedural due process. *See Mathews*, 424 U.S. at 332. Plaintiff has not alleged that he has applied for or has been denied SSI benefits. Therefore, the government cannot deprive Plaintiff of something he does not have. Accordingly, Plaintiff fails to allege sufficient factual allegations to state a procedural due process claim under § 1983.

### B. Plaintiff's "Family Unit" Claim

Plaintiff alleges that Defendant Olmeda and the Doe social workers failed to give his biological mother notice that she was entitled to "reunification services" prior to Plaintiff's juvenile court hearing.[9] (Compl. 13, 15 (citing *In re Marilyn H.*, 5 Cal. 4th 293, 306 (1993); and *In re DeJohn B.*, 84 Cal. App. 4th 100 (Ct. App. 2000)).) Defendants argue that this Court lacks jurisdiction to the extent Plaintiff's claims are based on his state juvenile case because of the *Rooker-Feldman* doctrine.[10] (*See* MTD 19–21.)

Under the *Rooker-Feldman* doctrine, federal courts lack subject matter jurisdiction to hear what are essentially appeals from state court judgments. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283–84 (2005); *Cooper v. Ramos*, 704 F.3d 772, 778 (9th Cir. 2012) ("It is a forbidden de facto appeal under *Rooker-Feldman* when the plaintiff in federal district court complains of a legal wrong allegedly committed by the

---

[9] In his Opposition brief Plaintiff raises, for the first time, the claim that "Defendants also did not provide valid notice to my father." (Opp'n 16.) The law is clear that a court may not look beyond a complaint to a party's moving papers, i.e. a response in opposition to a motion, when adjudicating a Rule 12(b)(6) motion. *Schneider*, 151 F.3d at 1197 n.1. Moreover, the Court's findings as to Plaintiff's mother would apply with equal weight to Plaintiff's father.

[10] Defendants also argue that the doctrine of collateral estoppel bars Plaintiff's claim. (MTD 21–22.) They also argue Plaintiff fails to state a claim. (*Id.* at 27.) Because the Court does not have jurisdiction over Plaintiff's "family unit" claim, it does not reach the collateral estoppel or failure to state a claim arguments.

17-CV-2592 JLS (JLB)

state court, and seeks relief from the judgment of that court." (internal quotation marks omitted)). "The purpose of the doctrine is to protect state judgments from collateral federal attack. Because district courts lack power to hear direct appeals from state court decisions, they must decline jurisdiction whenever they are 'in essence being called upon to review the state court decision.'" *Doe & Assocs. Law Offices v. Napolitano*, 252 F.3d 1026, 1030 (9th Cir. 2001) (quoting *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482 n.16 (1983)).

The doctrine is a narrow one: it "does not preclude a plaintiff from bringing an 'independent claim' that, though similar or even identical to issues aired in state court, was not the subject of a previous judgment in state court." *Cooper*, 704 F.3d at 778 (quoting *Skinner v. Switzer*, 562 U.S. 521, 531 (2011)). The doctrine prohibits "plaintiffs, having lost in state court, [from] 'essentially invit[ing] federal courts of first instance to review and reverse unfavorable state-court judgments.'" *Id.* (quoting *Exxon Mobil*, 544 U.S. at 283).

A district court is barred from considering claims that are "inextricably intertwined" with a state court judgment. *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003). A claim is "inextricably intertwined" with a state court judgment if "the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules." *Id.* "*Rooker–Feldman* bars any suit that seeks to disrupt or 'undo' a prior state-court judgment, regardless of whether the state-court proceeding afforded the federal-court plaintiff a full and fair opportunity to litigate her claims." *Id.* at 901 (quoting *Kenmen Eng'g v. City of Union*, 314 F.3d 468, 476 (10th Cir. 2002); and citing *Feldman*, 460 U.S. 462). Put differently, identifying inextricably intertwined issues involves determining "if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Cooper*, 704 F.3d at 779 (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J., concurring)).

Here, Defendants contend that California juvenile dependency proceedings are governed by the statutes set forth in the Welfare and Institutions Code. (MTD 20.) Generally, a state juvenile court may conduct a hearing to determine whether a child will

be brought within the jurisdiction of the court, pursuant to section 366.26 of the Welfare and Institutions Code. The juvenile court cannot undertake the hearing without the appropriate state agency and the clerk of the juvenile court first providing notice to the parent(s) of the child. Cal. Welf. & Inst. Code §§ 290.1, 290.2; *see* § 294 ("The social worker or probation officer shall give notice of a selection and implementation hearing held pursuant to Section 366.26 in the following manner: (a) Notice of the hearing shall be given to the following persons: (1) the mother. . . .").

Defendants assert that Plaintiff cannot challenge the lack of notice to his biological mother without also challenging the state juvenile proceeding. (MTD 21.) The juvenile court had to have provided notice to proceed with the section 366.26 hearing. *See* Cal. Welf. & Inst. Code §§ 290.2, 294. Plaintiff responds that he is bringing "independent claims" and is not seeking to set aside his juvenile petition. (Opp'n 23.) He further argues that "[e]xtrinsic fraud exists because plaintiff was kept in ignorance and the proceedings in petition No. 512952 was conducted in secret and neither of my parents were notified in accordance with the Hague Treaty." (*Id.* at 24.)

The Court agrees with Defendants. Plaintiff claims that his due process rights to a family unit were violated because his biological mother did not receive notice of the hearings. California statute requires the juvenile court to provide notice to a child's mother before a section 366.26 hearing. Cal. Welf. & Inst. Code § 294. The section 366.26 hearing was the alleged event that deprived Plaintiff of his right to a family unit. Therefore, Plaintiff cannot divorce the required notice from the hearing itself; the juvenile petition and hearing are inextricably intertwined with his notice issue. *Rooker-Feldman* bars this Court from reconsidering whether the state juvenile court afforded Plaintiff's mother appropriate process. *See Ragan v. Cnty. of Humboldt Dep't of Health & Human Servs.*, No. 16-cv-5580-RS, 2017 WL 878083, at *4 (N.D. Cal. Mar. 6, 2017) (finding *Rooker-Feldman* barred plaintiffs' due process claim that they were "never given a fair opportunity to retain and maintain custody of" their child).

Plaintiff's arguments to the contrary are unpersuasive. First, Plaintiff argues that he

is not seeking to set aside Petition No. 512952 and therefore his claim is independent and not inextricably intertwined. (Opp'n 23.) Even if the Court were to accept as true his allegations, Plaintiff's theory amounts to an indirect challenge to the juvenile court's decision. *See Bianchi*, 334 F.3d at 900 n.4. According to Plaintiff, the section 366.26 hearing caused Plaintiff to lose his right to a family unit. Presumably, the section 366.26 hearing resulted in an unfavorable outcome because his biological mother did not have notice to appear at the 366.26 hearing. [11] Yet, the juvenile court's section 366.26 hearing could not have occurred without proper notice. *See* Cal. Welf. & Inst. Code § 294. Essentially, the proper notice was a necessary element for the juvenile court to make its custody determination. Plaintiff does not attack Defendants' actions but rather the juvenile court's decision to adjudicate his case without proper notice. If the juvenile court actually failed to provide sufficient notice then Plaintiff's appropriate remedy is through state court, not federal court.

Second, Plaintiff contends there was extrinsic fraud because he was kept in ignorance, the proceedings were conducted in secret, and neither of his parents were notified.[12] (Opp'n 24.) Extrinsic fraud is an exception to the *Rooker-Feldman* doctrine. *See Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981); *see also Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139. "Extrinsic fraud is conduct which prevents a party from presenting his claim in court." *Wood*, 644 F.2d at 801 (citing *Green v. Ancora-Citronelle Corp.*, 577 F.2d 1380, 1384 (9th Cir. 1978)). "A plaintiff alleging extrinsic fraud on a state court is not alleging a legal error by the state court, rather, he or she is alleging a wrongful act by the adverse party." *Kougasian*, 359 F.3d at 1140–41 (citing *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003)).

---

[11] The Court's analysis is hampered by the fact that Plaintiff simply does not allege sufficient factual allegations as to what occurred at the hearing or the circumstances surrounding the hearing. This alone would foreclose Plaintiff's claim under the *Twombly* and *Iqbal* pleading standard.

[12] Plaintiff did not allege in his Complaint that the juvenile court hearing was conducted in secret. Like Plaintiff's previous allegations that he raised for the first time in his Opposition brief, the Court does not consider allegations raised outside the pleadings. *Schneider*, 151 F.3d at 1197 n.1.

The California Welfare and Institutions Code framework forecloses Plaintiff's extrinsic fraud claim.  Section 294 places the burden on the social worker to provide notice to the biological mother.  Cal. Welf. & Inst. Code § 294.  When the social worker fails to provide notice, as Plaintiff alleges here, then the result is a constitutional error.  *See In re Jasmine G.*, 127 Cal. App. 4th 1109, 1116 (Ct. App. 2005) ("We now make explicit what is implicit in *DeJohn B*—the failure to attempt to give a parent statutorily required notice of a selection and implementation hearing is a structural defect that requires automatic reversal." (citing *In re DeJohn B*, 84 Cal. App. 4th 100)).  The legal error resulting from failure to provide notice inures to the juvenile court's decision to proceed with a section 366.26 hearing without proper notice.  Therefore, Plaintiff's argument does not speak to extrinsic fraud; the fraud as alleged is intrinsic to the juvenile court's decision and cannot be adjudicated by this Court because of *Rooker-Feldman*.

In sum, this Court does not have jurisdiction over Plaintiff's claim that his mother did not receive proper notice.

### C.  **Monell** *Claim Against County*

Plaintiff alleges that "the County of San Diego . . . failed to adequately train employees and the County of San Diego's omission amounts to deliberate indifference." (Compl. 14.)  Plaintiff goes on to allege that "there is a need for more or different training" for the County's social workers.  (*Id.*)

A government entity may not be held liable under section 1983 unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights.  *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 694 (1978).  To establish liability for governmental entities under *Monell*, a "plaintiff must show: (1) that [the plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation."  *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (alterations in original) (internal quotation marks omitted) (quoting *Oviatt*

*ex rel. Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992)).

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.* (alteration in original) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

Here, Plaintiff has not established a constitutional right of which he was deprived. *See supra* sections III.A, III.B. Accordingly, he cannot make out a *Monell* claim against the County. *See Canton*, 489 U.S. at 389 ("[A] municipality can be liable under § 1983 only where its policies are the 'moving force [behind] the constitutional violation.'" (alteration in original) (quoting *Monell*, 436 U.S. at 694)).

## IV. Plaintiff's Motion to Strike

Plaintiff has filed a Motion to Strike, (ECF No. 22), relating to a declaration filed in support of Defendants' Motion to Dismiss. Plaintiff moves to strike the Declaration of Christina Snider, (ECF No. 9-1), because it fails to comply with 28 U.S.C. § 1746. (*See* ECF No. 22, at 2.)

Rule 12(f) provides that the court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994)). Accordingly, "[a] defense may be struck if it fails to provide 'fair notice' of the basis of the defense." *Qarbon.com Inc. v. eHelp Corp.*, 315 F. Supp. 2d 1046, 1048 (N.D. Cal. 2004); *see also Wyshak v. City Nat'l Bank*, 607 F.2d 824, 826 (9th Cir. 1979).

"Motions to strike are 'generally disfavored because they are often used as delaying

tactics and because of the limited importance of pleadings in federal practice.'" *Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174, 1182 (S.D. Cal. 2015) (quoting *Rosales v. Citibank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001)). "[M]otions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991). "When ruling on a motion to strike, this Court 'must view the pleading under attack in the light most favorable to the pleader.'" *Id.* (citing *RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 561 (C.D. Cal. 2005)).

28 U.S.C. § 1746 generally requires sworn declarations to be "in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form . . . 'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature).'" It appears that Ms. Snider's Declaration has omitted this phrase or a phrase substantially similar. (*See* ECF No. 9-1.) The Court will not consider the Declaration (or the material it attests to support) in the Court's analysis. Accordingly, the Court **GRANTS** Plaintiff's Motion to Strike, (ECF No. 22).

## V.  Conclusion

The Court finds that Plaintiff has not alleged sufficient factual allegations to support a constitutional deprivation. Accordingly, his 42 U.S.C. § 1983 fails because Plaintiff does not state a claim for a constitutional violation. The Court **GRANTS** Defendants' Motion to Dismiss, (ECF No. 4), and **DISMISSES WITHOUT PREJUDICE** Plaintiff's Complaint, (ECF No. 1-28).

This holding places Plaintiff's case in an odd procedural posture. Under the removal statute, if the district court determines that it lacks subject matter jurisdiction, "the case shall be remanded." 28 U.S.C. § 1447(c); *see Grant v. Unifund CCR, LLC*, 577 Fed. App'x 693, 696 (9th Cir. 2014) (unpublished decision) (noting that a district court's determination of lack of subject matter jurisdiction pursuant to *Rooker-Feldman* meant that the plaintiff's claims "should not have been dismissed, but rather should have been remanded to

California state court." (citing *Mills v. Harmon Law Offices, P.C.*, 344 F.3d 42 (1st Cir. 2003)). Here, the Court lacks subject matter jurisdiction over a portion of Plaintiff's claims, but as will be seen below, the Court will allow Plaintiff leave to amend his complaint to cure his claims for which the Court has subject matter. Thus, at this stage, the Court will dismiss all of Plaintiff's claims without prejudice. Should Plaintiff's remaining claims be dismissed with prejudice, then his family unit claim will be remanded to state court.

**MOTION FOR DEFAULT JUDGMENT**

Plaintiff filed a Motion for Default Judgment, ("Default MTN," ECF No. 7). Defendants have filed a Response in Opposition to, ("Default Opp'n," ECF No. 9), and Plaintiff filed a Reply in Support of, ("Default Reply," ECF No. 23), the Motion.[13] Additionally, Defendants filed an evidentiary objection to Plaintiff's Motion, (ECF No. 10). The Court vacated the hearing on the Motion and took the matter under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). (ECF No. 16). Having considered the parties' arguments and the law, the Court rules as follows.

## I. Legal Standard

Federal Rule of Civil Procedure 55 permits a court to enter default judgment. A court is to grant or deny default judgment at its discretion. *See Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) (citing *Haw. Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 511–12 (9th Cir. 1986); *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). Rule 55 is a two-step process; the first step requires a plaintiff to seek a Clerk of Court's entry of default. *See Eitel*, 782 F.2d at 1471. The second step requires either the Clerk or the Court to enter a default judgment. Fed. R. Civ. P. 55(b).

/ / /

---

[13] Plaintiff also filed a Motion entitled a "Motion to Accept Reply per FRCP Rule 6." (ECF No. 21.) Plaintiff acknowledges that his Reply brief was late-filed, but states that he mistakenly believed that his brief was due March 4, 2018. As his Reply brief does not prejudice Defendants and Defendants have not objected to the late-filed document, the Court **GRANTS** Plaintiff's Motion, (ECF No. 21).

## II. Analysis

Plaintiff argues that Defendant County of San Diego was served on November 29, 2017 and Defendant Olmeda was served November 30, 2017. (Default MTN 2–3.) He contends that, according to Federal Rules of Civil Procedure 6(a)(1)(B) and 12(a)(1)(A)(i), Defendants should have responded by December 20, 2017 and December 21, 2017, respectively. (*Id.*)

Defendants state that Plaintiff filed his original complaint in state court on October 27, 2017. (Default Opp'n 2 (citing ECF Nos. 1-27, 1-28).) They agree that Plaintiff served the County of San Diego on November 29, 2017 and Defendant Olmeda on November 30, 2017. (*Id.*) Then, on December 29, 2017, Defendants removed the case to federal court. (*Id.* (citing ECF No. 1).) On January 5, 2018, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b). (*Id.* at 3 (citing ECF No. 4).) Defendants generally argue that their responsive pleading was timely filed after removal and the timely responsive pleading precludes entry of default judgment. (*See id.* at 4–7.)

Here, it is clear that the Clerk of Court has not entered default against Defendants. Thus, Plaintiff has failed Rule 55's first step. Fed. R. Civ. P. 55(a). But, even if Plaintiff had requested the Clerk of Court to do so, the Clerk could not enter default judgment in Plaintiff's favor. California law provides a defendant thirty days to respond to a complaint, *see* Cal. Civ. Proc. Code §§ 412.20(a)(3), 430.40(a), or a defendant has thirty days to remove a case to federal court, 28 U.S.C. § 1446. The parties agree that Plaintiff served his state complaint on Defendant County of San Diego on November 29, 2017; therefore, Defendant had until December 29, 2017 to either respond in state court or remove this case to federal court. Both Defendants decided on the latter course of action and removed the case on the last possible day to do so. Plaintiff argues that a response was due no later than December 20, 2017. The only basis for his argument is that the Federal Rules of Civil Procedure should apply to a state case. This is not the law; as Defendants point out, "the Federal Rules of Civil Procedure . . . do not by their terms apply to actions filed and pursued in the state courts." *Bach v. Cnty. of Butte*, 147 Cal. App. 3d 554, 561 n.4 (Ct. App. 1983).

Federal Rule of Civil Procedure 81(c)(2) provides that "[a] defendant who did not answer before removal must answer or present other defenses or objections . . . within the longest of . . . 21 days after being served with the summons for an initial pleading . . . ; or 7 days after the notice of removal is filed." Twenty-one days after the initial pleading was, as Plaintiff asserts, December 20, 2017. Seven days after removal was January 5, 2017. The Court applies the longer of those two date, which is January 5, 2017. Defendants filed their Motion to Dismiss on January 5, 2017; therefore, their Motion was timely filed. Under Federal Rule of Civil Procedure 55(a), the Clerk of Court may only enter default against a party who has failed to plead or otherwise defend an action. Because Defendants timely filed a response, the Clerk of Court cannot enter default against Defendants.

Plaintiff's Reply contains piecemeal responses to all of Defendant's previous arguments. As to the timing for responding to his Complaint, Plaintiff again reiterates that an answer is due within twenty-one days of service. (Reply 11 (citing *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 689–90 (9th Cir. 1988)).) As previously stated, the Federal Rules of Civil Procedure do not apply to Plaintiff's state complaint. Until Defendants removed his case to federal court, Plaintiff's Complaint was governed by California law. The time under California law to respond to a complaint is thirty days. Plaintiff also argues that Defendants fail to show a federal statute that allows more than twenty days to answer his complaint. (*Id.* at 14.) The Court's previous discussion of the timing requirements answers Plaintiff's argument—Defendants' motion to dismiss was timely under Federal Rule of Civil Procedure 81.

In sum, the Court finds that Plaintiff cannot prevail on his Motion for Default Judgment.

/ / /

/ / /

/ / /

/ / /

/ / /

### III.  Conclusion

In light of the foregoing, the Court **DENIES** Plaintiff's Motion for Default Judgment, (ECF No. 7).[14]

### MOTION TO SEAL

On March 16, 2018, Defendants filed an *ex parte* Motion to Seal, (ECF No. 26).  As Defendants explain, Plaintiff filed documents in support of his Motion for Default Judgment that are confidential juvenile court records.  (*Id.* at 2.)  Defendants request the Court seal portions of Plaintiff's Reply, (ECF No. 23), including Exhibit 4 and Exhibit 7. (*Id.*)  Plaintiff responds to Defendants' Motion to Seal by filing a Motion to Strike, (ECF No. 28).  Plaintiff generally argues that Defendants' do not have standing to assert his privacy rights, but also requests the Court to seal "all Juvenile file records."  (*Id.* at 2.)

On January 12, 2018, the Clerk of Court restricted access to documents in this case to only the parties participating in the case.  The Court believes that this is a sufficient remedy to the disclosure of otherwise confidential documents that Plaintiff has filed in this docket.  Both parties are essentially asking for the same thing: the Court to protect Plaintiff's juvenile court records.  Restricting access to CM/ECF remedies this issue. Should further protections be warranted, the Court will consider them at a later time. Accordingly, the Court **GRANTS** Defendants' Motion to Seal to the extent it requests the CM/ECF access be restricted to case participants, (ECF No. 26).  The Court **DENIES** Plaintiff's Motion to Strike, (ECF No. 28).

### CONCLUSION

In light of the foregoing, the Court **GRANTS** Defendants' Motion to Dismiss, (ECF No. 4), and **DISMISSES WITHOUT PREJUDICE** Plaintiff's Complaint, (ECF No. 1-28).  The Court **DENIES** Plaintiff's Motion for Default Judgment, (ECF No. 7), GRANTS

---

[14] Defendants filed evidentiary objections to Plaintiff's Motion for Default Judgment.  (ECF No. 10.) Because the Court denies Plaintiff's motion, the Court **DENIES AS MOOT** the evidentiary objections.

Plaintiff's first Motion to Strike, (ECF No. 22), **GRANTS** Defendants' Motion to Seal, (ECF No. 26), and **DENIES** Plaintiff's second Motion to Strike, (ECF No. 28).

The Court entertains serious doubts concerning Plaintiff's ability to cure the deficiencies in his Complaint. *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010) (stating that a district court may deny leave to amend due to a litigant's "repeated failure to cure deficiencies by amendments previously allowed"). However, because Plaintiff is proceeding *pro se*, the Court will allow him to amend his complaint if he so chooses. While courts exercise broad discretion in deciding whether to allow amendment, they have generally adopted a liberal policy. *See United States ex rel. Ehmcke Sheet Metal Works v. Wausau Ins. Cos.*, 755 F. Supp. 906, 908 (E.D. Cal. 1991) (citing *Jordan v. Cnty. of Los Angeles*, 669 F.2d 1311, 1324 (9th Cir.), *rev'd on other grounds*, 459 U.S. 810 (1982)).

Plaintiff **MAY FILE** an amended complaint, if any, <u>on or before thirty (30) days from the date on which this Order is electronically docketed</u>. Plaintiff is warned that any amended complaint must contain all relevant claims and defendants. An amended complaint must be complete without reference to the original complaint and all claims not re-alleged will be deemed to be waived. *See Lacey v. Maricopa Cnty.*, 693 F.3d 928 (9th Cir. 2012) (en banc). *Failure to file an amended complaint within the time allotted may result in a dismissal of Plaintiff's case with prejudice.*

**IT IS SO ORDERED.**

Dated: July 16, 2018

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge